## Rogers *vs.* Toole and others,

Where the defendant had obtained an order, requiring the executor of the deceased complainant, to show cause before the court, upon a regular motion day, why the suit should not be revived in the name of such executor, or in default thereof, that the bill should be dismissed, and the counsel for the deceased complainant thereupon stipulated with the solicitor for the defendant, that the time for showing cause should be extended 20 days; at the expiration of which time, no court was held, or appointed to be held, at the place specified in the order to show cause; *Held*, that it was irregular for the defendant, on the next motion day thereafter, to take an order by default, dismissing the bill, with costs to be paid by the executor, out of the estate of the deceased complainant.

As a general rule, where notice of a motion is given, or where an order to show cause is obtained and served upon the adverse party, and he neglects to appear and oppose the application, the specific relief, mentioned in the notice or order, and no other, will be granted.

But if the adverse party appears to oppose the application, and the applicant is not entitled to the particular relief specified, the court, under the alternative part of the notice, or order, may give him such further or other relief as he may be entitled to, upon the facts of the case.

Where the sole complainant in a suit dies, and the personal representatives of the decedent have no interest, in the subject matter of the litigation, which would entitle them to revive the suit, the personal estate of the testator or intestate whom they represent, cannot be charged with the costs which have accrued in the suit previous to the abatement, or with the costs of an application to compel them to revive.

This was an appeal from a decision of the vice chancellor of the second circuit, refusing to set aside an order dismissing the bill of the deceased complainant, with costs to be paid out of his estate, by his personal representative. In May, 1842, the complainant died, and, no proceedings to revive the suit having been taken, Thomas Toole, and four others of the defendants, who had appeared in the cause, but who had not yet put in their answers, applied to the vice chancellor of the second circuit, before whom the bill was filed, and obtained an order that D. L. Rogers, the executor of the complainant, show cause, before such vice chancellor, on the 9th of October, 1843, why the suit should not stand revived in the name of such executor; or, in default thereof, that the complainant's bill be dismissed, so far as the interests of the

Rogers *v.* Toole.

said executor were concerned; and, that the petitioners, within fifteen days from the date of such order, serve a copy thereof on the said executor. The order not having been served as directed, the petitioners, on the 14th of August, 1843, obtained a further order requiring the executor to show cause, at the court house in Clarkstown, on the 9th of November then next, and that copies of that and of the previous order be served on the executor, on or before the 2d of October. Service of these orders was made upon W. N. Dyckman, who was the solicitor for the deceased complainant, and the notice was directed to him generally; and on the 9th of November, he signed a stipulation, as solicitor for the complainant, consenting that the order to show cause should stand over until the 20th of that month, at the court house in White Plains, without prejudice to the rights of any of the parties. Dyckman, when he gave the stipulation, had not been consulted or employed by the executor, in relation to the petition, but supposed that the order had been served upon the executor personally. On the 20th of November, Dyckman employed J. S. Mitchell to attend upon the motion at White Plains, when a further stipulation was entered into and signed by the latter, as counsel for the complainant, consenting that the time mentioned in the orders be extended twenty days from the 24th of November, 1843, and admitting due service of the orders. But no place for showing cause was fixed in the latter stipulation, nor was there any court appointed to be held, by the vice chancellor, on the day to which the time for showing cause was extended by this last stipulation. On the 9th of January, 1844, the solicitor for the petitioners appeared at the vice chancellor's court, at Poughkeepsie, and took the order complained of, ex parte. The vice chancellor having refused to vacate or modify the order, D. L. Rogers, the executor, appealed from his decision.

*J. Rhoades*, for the appellant.

*W. Silliman*, for the respondents.

Rogers *v.* Toole.

THE CHANCELLOR. If the counsel for the appellant is right in supposing that the executor of the complainant was not the proper person to revive the suit, the order of the 9th of January, 1844, was not only technically irregular, but it was wrong upon the merits. If it had been entered in the terms of the order to show cause, however, which was the only order the petitioners had a right to enter upon a default, the executor himself would have had no right to complain of the final order. For the order to show cause asked for no costs against the executor, or against the estate which he represented, but only asked that the bill should be dismissed so far as the interests of the executor of the complainant were concerned.

From the bill, which the respondents exhibited, to the court, on this appeal, although it was not read upon the motion before the vice chancellor, I should infer that the judgment recovered against the heirs and devisees of I. Bonnet, junior, was recovered by the complainant in the character of surviving executor of Henderson, for moneys received by Bonnet in his lifetime, as a co-executor of the will of Henderson; and which moneys had been applied by Bonnet to his own use, in violation of his trust. If so, I do not see any interest which the executor, of the surviving executor of Henderson, can have in the subject matter of the litigation, which would authorize him to revive this suit. And if David L. Rogers has no right to revive and continue this suit, in his character of executor of the complainant, neither he, nor the estate which he represents, can be charged either with the costs which had accrued in the lifetime of the complainant, or with the costs of the application to compel him to revive. The 17th section of the title of the revised statutes relative to granting letters testamentary and of administration, (2 *R. S.* 72,) expressly provides that no executor of an executor shall, as such, be authorized to administer on the estate of the first testator; but in such cases, letters of administration *de bonis non*, with the will of the first testator annexed, are to be granted. (*See also* 2 *R. S.* 114, § 14.)

Again; if this was a proper case for calling upon the personal representative of the complainant to revive the suit, and to

charge the estate of the deceased complainant with costs, in case his executor should neglect to revive within such reasonable time as the court should direct for that purpose, the order to show cause, or the prayer of the petition upon which it was founded, should have distinctly notified the executor that the petitioner would ask for costs of the suit, to be paid by the estate of the decedent, in case the executor should not revive the suit. And a copy of the petition, as well as of the order founded thereon, should have been served upon the executor a reasonable time before the day appointed for showing cause.

As a general rule, when a notice of a motion is given, or an order to show cause is served upon the adverse party, and he neglects to appear to oppose the motion, or to show cause against the relief asked for in the order, the party giving the notice or obtaining the order to show cause, is only entitled to such relief, by default of the adverse party, as is specified in the notice, or as is stated in such order. And the former cannot, under the alternative clause for other relief, not specified, obtain further or different relief, which he has not apprised the adverse party that he intended to ask for. But where such application is opposed, if the applicant is not entitled to the particular relief asked for, the court, under the alternative clause, may give him such further or other relief as the facts presented to the court entitle him to, under all the circumstances of the case. This rule is adopted for the convenience of the court, and to save to the adverse party the useless expense of attending to oppose a motion, or to show cause against an order, when he has no right to oppose, or has no interest in opposing, what is specifically asked for by the other party. In this case, therefore, if the proceedings of the respondents, in obtaining the order of January, 1844, had been strictly regular in other respects, the court should have gone no further than to make the order, to show cause, an absolute order that the bill of complaint should be dismissed, as far as the interest of the executor was concerned; in the language of the order to show cause. And the subsequent clause in the final order of January last, directing that the petitioners should recover their costs in the cause, and upon the petition, out of the estate

of the deceased complainant, was not authorized by the order to show cause, of which service was admitted in the stipulation of November, 1843; even if.that stipulation is to be considered as made by the counsel for the appellant, and not as counsel for the deceased complainant. Besides; the time for showing cause being, by the stipulation, fixed for the 14th of December, when no court was appointed to be held, it was irregular to take an order by default at the second regular motion day thereafter, without any further notice to the executor, or to his solicitor, that the motion was to be made at that time. For, as he had no opportunity to show cause at the time specified in the stipulation, he was not in default in not appearing to oppose the application.

For these reasons, the vice chancellor should have set aside the order of January, 1844, as irregular and unauthorized. His decision in refusing that application must therefore be reversed; and the prayer of the appellant's petition must be granted, with ten dollars costs, together with his taxable costs on this appeal.